David R. NUNN, Appellant

v.

COMMONWEALTH OF KENTUCKY,
Appellee

2013–SC–000814–MR

Supreme Court of Kentucky.

RENDERED: APRIL 2, 2015

Counsel for Appellant: David R. Nunn, Little Sandy Correctional Complex

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals

## OPINION OF THE COURT BY JUSTICE VENTERS

Appellant, David Nunn, appeals from a judgment of the Hardin Circuit Court sentencing him to twenty years' imprisonment for the crimes of fleeing and evading in the second-degree, being a felon in possession of a handgun, and being a persistent felony offender in the first-degree. As grounds for relief, Appellant contends that the trial court erred by: (1) denying his motion to

suppress evidence found incident to a *Terry* stop; (2) denying his right to counsel as construed under Section 11 of the Kentucky Constitution by unduly restricting his right to hybrid counsel; (3) admitting evidence of other crimes contrary to KRE 404(b); (4) permitting the Commonwealth to comment upon his post-arrest silence; (5) denying his motion for a continuance thus depriving him of due process; and (6) erroneously imposing court costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When Kentucky State Police Trooper Shannon White stopped Appellant for operating his vehicle with an expired temporary tag, Appellant was unable to produce vehicle registration documents or proof of insurance. White decided that the proper course of action was to impound Appellant's car, so she summoned a tow truck. As they waited for the tow truck, White directed Appellant to exit the vehicle and walk to the back of it so that White could frisk him for weapons. Appellant got out of the vehicle, but hesitated in walking to the rear of the vehicle. When the trooper demanded compliance, Appellant turned and ran away. White took chase and caught him. A bag of marijuana was found along the route of Appellant's attempted escape and a search of his person produced a loaded handgun. Appellant was indicted on several charges arising from the incident, and the case went to trial on three of those charges: first-degree fleeing and evading police, possession of a handgun by a convicted felon, and being a persistent felony offender.

At trial, Appellant testified that he was in possession of the firearm only because earlier that day he had taken it from his daughter for her own safety and protection (lest there be an accident). Based upon that defense, the jury was given a choice of evils instruction. Ultimately, the jury found Appellant guilty of second-degree fleeing and evading police, possession of a handgun by a convicted felon, and of being a persistent felony offender in the first-degree, for which he received a total sentence of twenty years' imprisonment. Due to Appellant's status as an "indigent" defendant, the trial court waived the fines associated with this conviction, but ordered that he pay the court costs upon his release from incarceration. Appellant appeals as a matter of right.

## II. ANALYSIS

### A. The trial court correctly denied Appellant's motion to suppress.

We first consider Appellant's claim that the trial court erred in failing to suppress the handgun found on his person and the marijuana found nearby. Appellate review of a trial court's ruling on a motion to suppress involves a two-step process. *Frazier v. Commonwealth*, 406 S.W.3d 448, 452 (Ky.2013) ("In reviewing a trial court's ruling on a suppression motion, an appellate court must first determine if the trial court's factual findings are not clearly erroneous and are supported by substantial evidence.... A *de novo* review of the trial court's application of the law to the facts completes the analysis.") (citations omitted). *See also Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky.2004) (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

Appellant does not challenge the trial court's findings of fact. It is not disputed that Appellant fled from the police officer after she had instructed him to submit to a pat down search. The crux of Appellant's argument is that the initial stop for the expired license tag was completed, and that as they waited for the tow truck to arrive, Trooper White had no authority to further detain him, and no justification to

search his person. He reasons that White's demand that he exit the vehicle and submit to a pat down was an attempt to conduct an illegal search leading directly to the discovery of the incriminating evidence.

■ We reject the premise of Appellant's argument because we conclude that White did not abuse her authority in detaining Appellant as they awaited the tow truck. An officer may briefly detain a citizen upon individualized reasonable articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). White's observation of Appellant's unlawfully licensed vehicle supplied the individualized, reasonable articulable suspicion for stopping his vehicle. Having stopped the vehicle and discovered that it was not insured, White's decision to hold the vehicle to prevent its return to the roadway was a reasonable course of action based upon public safety. Although Appellant was not under arrest, he was still subject to the *Terry* stop while his vehicle was being secured.

■ However, Appellant correctly asserts that the reasonable suspicion that justifies the initial stop of a vehicle (here, the expired license tag) does not, under *Terry*, authorize an additional pat down search for weapons *unless* it includes, or is later supplemented with, the additional reasonable belief or suspicion that the subject may be armed. "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked[.]" *Ybarra v. Illinois*, 444 U.S. 85, 93–94, 100

S.Ct. 338, 343, 62 L.Ed.2d 238 (1979). Where the "the police officer had sufficient facts to form a reasonable belief that [the detained suspect] was armed ... she was entitled to conduct a protective pat down search." *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky.2002) (citing *Terry*, and *Commonwealth v. Crowder*, 884 S.W.2d 649, 652 (Ky.1994) ("Since the nature of the non-threatening contraband was not immediately apparent to [the police officer] when conducting the patdown, his further exploration of Crowder's pocket 'was not authorized by *Terry* ' "[.] )).

Thus, if Trooper White entertained a reasonable suspicion that Appellant may have been armed, her concern for her own safety would justify the demand to frisk Appellant for weapons as they waited by the side of the road for a tow truck. However, while our review of the record discloses that White never articulated that kind of suspicion, the failure in that regard ultimately proves to be inconsequential because Appellant's sudden decision to flee the scene changes the analysis.

■ We recognize that "flight, in and of itself, is insufficient to establish probable cause" to arrest. *Commonwealth v. Jones*, 217 S.W.3d 190, 197 (Ky.2006). But unlike the usual situation where flight might be regarded as sign of guilt, Appellant's flight was the *corpus delicti* of the very crime of second-degree fleeing and evading police for which he now stands convicted. Second-degree fleeing and evading police is a Class A misdemeanor. It was committed in Trooper White's presence and she was, therefore, authorized to arrest Appellant immediately.[1] The search of his person that followed his capture was incident to that arrest, and was, therefore, unquestionably proper. The contraband was

---

1. KRS 431.005(1): "A peace officer may make an arrest: [ ] (d) Without a warrant

when a misdemeanor [ ] has been committed in his or her presence[.]"

found as a result of a lawful search incident to arrest. We accordingly agree with the trial court's ruling denying Appellant's motion to suppress the discovery of the handgun. Regardless of the propriety of White's first attempt at frisking Appellant for weapons, Appellant's subsequent behavior inevitably led to the discovery of the evidence.[2] The trial court's denial of Appellant's motion to suppress was correct.

Appellant cites *Turley v. Commonwealth,* 399 S.W.3d 412 (Ky.2013), for the principle that, even if the initial stop was justified by reasonable suspicion, an officer cannot detain a motorist beyond completion of the original purpose of the initial traffic stop *"unless something happened during the stop* to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.'" *Id.* at 421 (*quoting United States v. Davis,* 430 F.3d 345, 353 (6th Cir.2005) (emphasis added).

However, the facts in *Turley* are distinguishable: there, although the officer's purpose in making the traffic stop had been completed, he improperly continued his control over the motorist. We reasoned that contraband discovered during the course of this subsequent detention should be excluded from evidence because the subsequent seizure was unaccompanied by individualized articulable reasonable suspicion to extend the detention as required by Terry. *Turley,* 399 S.W.3d at 415, 416. Here, much to the contrary, the fact that White and Appellant were still waiting for the tow truck signifies that the business for which the stop was justified was ongoing. But even more compelling, in contrast with *Turley,* here "something happened during the stop." Appellant committed an additional crime in the officer's presence (he fled while in lawful *Terry* custody), and so additional intervention was warranted, including the resulting search of Appellant.

**B. The trial court's abuse of discretion in imposing limitations upon Appellant's hybrid counsel arrangement was harmless error.**

Prior to the trial Appellant filed notice of his "Limited Waiver of Counsel," and a *Faretta* hearing was held.[3] At the hearing, Appellant indicated that he did not want to exclusively represent himself, but rather wished to have access to appointed counsel; he further emphasized that he wanted to be the "ultimate arbiter" of any disagreements with appointed counsel about the filing of motions or the examination and cross-examination of witnesses. As a result of the hearing, the trial court reconfigured the role of appointed counsel to that of hybrid counsel, subject to four conditions that Appellant claims are so restrictive that they violate his rights under Section 11 of the Kentucky Constitution. The four conditions are paraphrased as follows:

1) Motions proposed by Appellant must be reviewed by the hybrid counsel. If

---

**2.** Trooper White testified that she frisked citizens as a matter of course in such situations, which we take to mean that she does so without individualized reasonable articulable suspicion based upon the specific circumstances. Had Appellant submitted to her demand, instead of running away, the case would present a much different question. His flight provided the justification for the search and discovery of the handgun, which might otherwise have been absent.

**3.** *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (A defendant has a constitutional right to represent himself but the trial court must inquire whether he is doing so knowingly and voluntarily, and whether the defendant is competent to do so).

counsel disagreed with the filing of the motion, Appellant could proceed, but would have to do so *pro se.*

2) Any questions that Appellant wanted to ask the witnesses at trial had to be submitted to hybrid counsel 30 days before trial "so [Appellant and hybrid counsel] can determine whether there is a disagreement over the appropriateness of the proposed questions."

3) If, against the advice of hybrid counsel, Appellant chose to ask a particular question of a witness, then he must conduct the entire examination or cross-examination of that witness by himself, without the intervention of hybrid counsel.

4) Appellant was required to disclose to the court seven days before trial which witnesses he would personally examine (or cross-examine) in accordance with the preceding conditions.

"In all criminal prosecutions the accused has the right to be heard by himself and counsel...." Ky. Const. § 11. Long ago, in *Wake v. Barker* we recognized the import of the phrase "to be heard by himself and counsel," holding that "an accused may make a limited waiver of counsel, specifying the extent of services he desires, and he then is entitled to counsel whose duty will be confined to rendering the specified kind of services (within, of course, the normal scope of counsel services.)" 514 S.W.2d 692, 696 (Ky.1974). The accused's right in that regard is, of course, subject to the trial court's inherent authority to impose measures necessary for an orderly trial. *Id.* at 697.

A litigant with hybrid counsel status stands in the position of being co-counsel with a licensed attorney. *Mitchell v. Commonwealth,* 423 S.W.3d 152, 158 (Ky.2014). A trial court acts erroneously where it affirmatively misrepresents a defendant's choice of counsel as being between "only two alternatives: either represent himself or accept appointed counsel." *Baucom v. Commonwealth,* 134 S.W.3d 591, 592 (Ky.2004).

We reject Appellant's argument with respect to the first condition. Far from impinging upon his right to partial self-representation, the first condition merely sets out an orderly process for handling conflict between Appellant and counsel regarding motion practice. It comports well with Appellant's expressed desire to be the "ultimate arbiter" of any disputes with counsel.

The second condition is somewhat more problematic. It seems to be designed to facilitate communications between Appellant and counsel so that any disagreements over the examination or cross-examination of witnesses can be ironed out well before the trial. Entertaining such disputes during the trial would be an obvious disruption, the avoidance of which is a reasonable objective for the trial court. But the order requires Appellant to determine at least 30 days before the trial *all* of the questions he wants to ask of the witnesses. Very few, if any, experienced trial attorneys would be able to prescribe in detail, thirty days before a trial, all of the questions that would be asked. Jury trials are fluid, dynamic processes. Witnesses are not stage actors bound to the playwright's script, and even those that are well-rehearsed have been known to improvise their lines at trial with totally unexpected information. We agree with Appellant that it is not possible to predict all that a witness will say when he takes the witness stand, and therefore it is not possible to anticipate the questions that will be required for effective representation at trial. The second condition is not a reasonable requirement.

The third condition is also problematic. It provides that if Appellant chooses to examine a witness on a single question that his hybrid counsel declines to ask, then he must conduct the entire examination or cross-examination of that witness on his own. The rationale behind his requirement is not readily apparent and the Commonwealth offers none. Perhaps the requirement reflects the tradition of some trial courts that once a particular attorney on one side of a case begins the questioning of a witness, that attorney cannot hand the witness over to co-counsel to complete the questioning. Presumably, the tradition prevents attorneys from "tag-teaming" a witness with prolonged examination to wear the witness down. In any event, we have no rule of trial procedure that imposes or authorizes that policy. The trial court's inherent discretion to oversee the management of a trial may allow the application of such a policy on a case-by-case, or witness-by-witness, basis. But, a blanket application of the policy without individualized consideration of the specific case is an abuse of discretion, especially when the litigant's right "to be heard by himself and counsel" is at stake. As applied in the context of hybrid counsel, the condition imposed leaves the litigant with a Hobson's choice: allow hybrid counsel to examine the witness exclusively in accordance with the will of hybrid counsel, or question the witness without the help of counsel at all. That choice is not in keeping with *Baucom* and *Wake*.

Finally, Appellant argues that the fourth condition imposed upon his hybrid representation—informing the court in advance of trial which witnesses he would personally examine—forced him to give advance notice of privileged elements of trial strategy and attorney/client relationships. We disagree. Because that condition intersects with the second condition, it suffers some of the same infirmities, but it does not infringe upon any trial privilege or protected aspect of the attorney/client relationship.

 In summary, we agree that order of the trial court imposing the second land third conditions upon Appellant's hybrid counsel relationship was an abuse of discretion. Of course, "[t]rial courts retain 'wide latitude' in imposing 'reasonable limitations' on cross-examinations, and act well within their purview in limiting examinations that are harassing, confusing, repetitive, or only marginally relevant." *Goncalves v. Commonwealth*, 404 S.W.3d 180, 203 (Ky.2013) (citing *Star v. Commonwealth*, 313 S.W.3d 30 (Ky.2010)). However, there is no indication in the record that any of the impediments to an orderly trial cited in *Goncalves* were likely to occur here, or that the conditions imposed were "reasonable limitations" in the attendant circumstances.

There is also no indication in the record of how Appellant was prejudiced by the order. Appellant has failed to produce even one example of how he would have proceeded differently at trial in the absence of the offending conditions. He does not argue, for example, that he would have asked any additional questions or filed additional motions, or that he in any way altered his defense because of these limitations upon the hybrid counsel arrangement. It is not the duty of the court to plumb the depths of the proceeding and speculate as to whether or not Appellant would have proceeded differently at trial without these limitations.

 Citing to *Deno v. Commonwealth*, 177 S.W.3d 753 (Ky.2005), Appellant argues that the limitations upon his right to hybrid counsel constitutes structural error, warranting reversal, even in the absence of a showing of prejudice. In *Deno*, however, the trial court gave the defendant two

options: "you can't go co-counsel. You either represent yourself or [your attorney] represents you." *Id.* at 757. That complete abridgment of the defendant's right to hybrid counsel was structural error. Here however, the trial court granted Appellant's request for hybrid counsel and allowed him to proceed accordingly. Because the Kentucky Constitution guarantees the right to hybrid counsel, and we give wide latitude to the defendant in choosing the extent to which he wishes to act as his own counsel, there are countless variations on how the duties of the defense will be divided between a defendant and his hybrid counsel. And, as noted in *Goncalves,* we also give correspondingly wide, but not unlimited, latitude to the trial judges to manage those countless variations in their effort to accommodate a defendant's desire for hybrid counsel. To that end, we recognize that error will inevitably occur in the trial court's effort to fairly administer a hybrid counsel arrangement. It is not too much that we expect a defendant, who claims that the accommodation of his hybrid counsel arrangement was unduly restrictive, to demonstrate some modicum of harm resulting from the claimed errors. Accordingly, structural error review as applied in *Deno* is inappropriate for the situation we address.

Erroneous limitations imposed upon hybrid counsel arrangements undoubtedly implicate a possible interference with the constitutional right to hybrid counsel and are subject to harmless error analysis. *See Crossland v. Commonwealth,* 291 S.W.3d 223, 231 (Ky.2009) ("Errors of constitutional import—the most fundamental and serious type of errors—are generally analyzed under a harmless error standard.") The harmless error standard of review of constitutional errors is whether the errors were harmless beyond a reasonable doubt. *Winstead*

*v. Commonwealth,* 283 S.W.3d 678, 689 n.1 (Ky. 2009) (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and *Talbott v. Commonwealth,* 968 S.W.2d 76 (Ky.1998)). Upon our review of the record, we are satisfied that any error committed by the trial court's limitation upon Appellant's right to counsel was harmless beyond a reasonable doubt.

## C. The trial court did not err in allowing the introduction of proof of other crimes during the first phase of the trial.

Appellant's trial was trifurcated. The first phase was conducted only upon the fleeing and evading charge to determine if Appellant was: not guilty; guilty of fleeing or evading police in the first-degree (a Class D felony); or guilty of fleeing or evading police in the second-degree (a Class A misdemeanor). During this phase, the prosecutor commented upon, and elicited, testimony regarding the weapons and marijuana found during the course of Appellant's arrest. Although Appellant made no contemporaneous objections, he now complains that introduction of that evidence violated KRE 404(b).

The gun found on his person and the marijuana dropped along the path of his departure establish a motive for Appellant's sudden flight. The gun and marijuana in Appellant's pocket would tend to explain why he, a convicted felon, might choose to run away from Trooper White rather than submitting to a pat down search. KRE 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible: (1) If offered for some other purpose, such as proof of motive[.]" Accordingly, the trial court did not err in allowing the introduction of that evidence.

**D. Appellant's due process rights were not violated by the Commonwealth's reference to Appellant's post-arrest silence.**

Appellant argues that he was deprived of due process when the prosecutor said in his closing argument: "[Appellant] didn't make any mention of this story to the police [that he took possession of the gun only to get it out of his daughter's possession for her own safety]. He didn't say, 'Oh, you know it's no big deal, it's my daughter's.' He never mentioned it that night." The prosecutor was undoubtedly referring to Appellant's post-arrest silence, since the gun was not found until he was arrested. Appellant contends that this argument was an improper comment upon his right to remain silent.

The issue was not preserved for appellate review by a contemporaneous objection to the prosecutor's comment; therefore, our review is to determine if it resulted in palpable error under RCr 10.26: "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

Palpable error is essentially comprised of two elements: obviousness and seriousness. *Ernst v. Commonwealth,* 160 S.W.3d 744, 759 (Ky.2005). In order to find palpable error, the record must reflect that the error alleged was obvious, such that its erroneous aspect should not have gone unnoticed, and that its interjection into the proceeding resulted in manifest injustice. We agree with Appellant that these statements were obviously improper. "The Commonwealth is prohibited from introducing evidence or commenting in any manner on a defendant's silence once that defendant has been informed of his rights and taken into custody." *Hunt v. Commonwealth,* 304 S.W.3d 15, 35 (Ky. 2009), *as corrected* (Jan. 6, 2010), *as modified on denial of rehearing* (Mar. 18, 2010).

However, clear error alone is not enough to warrant reversal; if unpreserved, it must result in manifest injustice in order to rise to the level of palpable error. "To discover manifest injustice, a reviewing court must plumb the depths of the proceeding ... to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky. 2006). In other words, when reviewing for manifest injustice, the court must discern whether there is a substantial possibility that, but for the error, the verdict would have been different or resulted in a fundamentally unfair trial. Otherwise, the unpreserved error will be held non-prejudicial. *Schoenbachler v. Commonwealth,* 95 S.W.3d 830, 836 (Ky.2003).

"Not every isolated instance referring to post-arrest silence will be reversible error." *Wallen v. Commonwealth,* 657 S.W.2d 232, 233 (Ky.1983). Typically, reversal is warranted where the prosecutor has repeatedly mentioned and emphasized an accused's post-arrest silence. *Id.* In the case at hand, the prosecutor's improper comment was fleeting and was not otherwise emphasized. Given the lack of emphasis regarding Appellant's post-arrest silence and the very substantial weight of the evidence properly presented to establish Appellant's guilt, we are satisfied that any error committed was harmless.

**E. The trial court properly denied Appellant's motions for a continuance.**

Appellant's next claim of error is that he was deprived due process when the

trial court denied his motions to continue the trial. Nineteen days before trial, Appellant's hybrid counsel filed a motion to continue the trial, citing her busy and conflicting trial schedule, delays in getting a transcription of the suppression hearing, and the failure of the Commonwealth to timely produce a lab report. She renewed the motion five days before the trial. Appellant, proceeding *pro se*, also filed his own motion to continue the trial. Appellant's *pro se* motion cited his pending effort to obtain a writ of prohibition from the Court of Appeals relating to various hybrid counsel issues. He argues now that the trial court should have continued the trial in order to await the ruling of the Court of Appeals on his writ petition.

The trial court is vested with discretion to grant the postponement of a trial "upon motion and sufficient cause shown." RCr 9.04. *Snodgrass v. Commonwealth,* 814 S.W.2d 579 (Ky.1991); *Williams v. Commonwealth,* 644 S.W.2d 335 (1982). "A conviction will not be reversed for failure to grant a continuance unless that discretion has been plainly abused and manifest injustice has resulted." *Taylor v. Commonwealth,* 545 S.W.2d 76, 77 (Ky.1976); *see also Hudson v. Commonwealth,* 202 S.W.3d 17, 22 (Ky. 2006).

We are satisfied that the trial court was acting within its sound discretion when it declined to postpone Appellant's trial. The pendency of a writ petition does not automatically require a postponement of related trial. If it did, anyone wanting a

continuance could obtain one, regardless of the sufficiency of his cause, by simply filing a writ petition. RCr 9.04 leaves that discretion in the hands of the trial court. Appellant's grievances with respect to the hybrid counsel arrangement were subject to ordinary appeal review, as this opinion demonstrates. His right to that review was not dependent upon the writ action. While the trial court had discretion to postpone the trial, it was not required to do so. The trial court acted well within its discretion in determining that the pendency of his writ action did not supply "sufficient cause" for relief under RCr 9.04.

**F. The trial court's imposition of court costs was proper.**

Finally, Appellant argues that the trial court erred by imposing court costs in the amount of $190.00 to be paid within ninety days of his release from incarceration, despite his indigent status. However, the fact that Appellant was adjudged to be indigent does not foreclose the ability of the court to impose court costs.

In *Maynes v. Commonwealth,* 361 S.W.3d 922, 929 (Ky.2012) we distinguished the "poor person" standard in KRS 23A.205,[4] which directs the exemption from court costs, from the "needy person" standard in KRS 31.100, which authorizes the appointment of counsel for the indigent defendant in a criminal case. Thus, the fact that Appellant was represented by appointed counsel, does not exempt him from court costs upon the basis that he is a "poor person."

4. KRS 23A.205(2) provides that "The taxation of court costs against a defendant, upon conviction in a case, shall be mandatory and shall not be subject to probation, suspension, proration, deduction, or other form of nonimposition in the terms of a plea bargain or other-wise, unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future."

 Recently, in *Spicer v. Commonwealth*, 442 S.W.3d 26 (Ky.2014), we clarified:

> The assessment of court costs in a judgment fixing sentencing is illegal *only* if it orders a person adjudged to be "poor" to pay costs. Thus, while an appellate court may reverse court costs on appeal to rectify an illegal sentence, we will not go so far as to remand a facially-valid sentence to determine if there was in fact error [in not adjudging a person as "poor"]. If a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be ... [a] poor person before imposing court costs, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal.

*Id.* at 35.

Here, the trial court order waived "any fines ... due to Defendant's indigency" and reflected that the court informed Appellant of his "right to a free appeal, including free counsel and free transcript, if he could not afford the same." However, the court expressly imposed court costs and made provisions for its deferred payment, without finding that Appellant was a "poor person" within the meaning of KRS 23A.205. Furthermore, nothing in the record reveals that Appellant sought a determination of "poor person" status under KRS 23A.205. Accordingly, the trial court's order did not impose court costs "contrary" to its findings. The assessment of court costs was facially valid and did not constitute error.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Hardin Circuit Court is affirmed.

All sitting. All concur.