# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

### 2015-SC-000622-MR

JAMIE DARRELL KEENE                                             APPELLANT


|  | ON APPEAL FROM PIKE CIRCUIT COURT |
|---|---|
| V. | HONORABLE EDDY COLEMAN, JUDGE |
|  | NO. 14-CR-00248 |


COMMONWEALTH OF KENTUCKY                          APPELLEE


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A jury in Pike Circuit Court convicted Jamie Darrell Keene (Keene) of three counts of first-degree rape. Consistent with the jury's sentencing recommendations, the trial court fixed his sentence at seventy-years' imprisonment.

Keene now appeals as a matter of right, Kentucky Constitution § 110(2)(b), arguing that the trial court erred by: (1) permitting the Commonwealth, during its opening statement, to comment on a defense witness's credibility; (2) admitting hearsay testimony from two of the Commonwealth's witnesses; (3) admitting testimony regarding Keene's prior assault conviction; and (4) admitting testimony that Keene invoked his right to silence during an interview with police. For the reasons set forth below, we affirm.

## I. BACKGROUND

When the victim in this matter, A.C., was four years old, Keene married A.C.'s mother, Angel Keene (Angel). In November 2013, Keene was investigated for assaulting Angel, and Child Protective Services (CPS) began monitoring A.C. Shortly thereafter, A.C. was removed from the home of Keene and Angel, and placed in the care of Keene's mother, Donna Keene (Donna). On November 23, 2013, in coordination with CPS's prevention plan, Donna transported A.C. to Judy's Place, a support home for abused children. Once at Judy's Place, A.C. submitted to a forensic interview in which she denied that Keene had sexually abused her. However, during a second interview at Judy's Place on April 1, 2014, A.C. recanted her previous statements and provided numerous details of rape and physical abuse by Keene. With the information A.C. provided in the second interview, Keene was indicted in Pike County on three counts of first-degree rape, which occurred between July 1, 2013 and January 27, 2014. A.C. was eleven years old at the time of each rape.

At trial, A.C. testified that she did not feel safe during her first interview due to threats from Donna that, if she testified, Donna would "kick" her and her family out of her house. A.C. later testified that Keene had raped her: in his Chevrolet Blazer on a remote hill in Pike County; in the garage of the home they shared; and in Keene and Angel's bedroom during Keene's birthday party. She also testified that: during the first rape, she began to cry and Keene said he would do it harder if she did not stop crying; she began to bleed following one of the rapes and Keene told her that he had "popped her cherry"; and

2

Keene told her that if she or Angel got him in trouble that he would kill them both. A.C. testified that she had seen Keene beat her mother many times; thus, she believed his threats to be true. We note that Keene admitted at trial that he pled guilty to domestic violence against Angel and that, during the course of the sexual abuse investigation, he was incarcerated. We set forth additional facts as necessary below.

## II. STANDARD OF REVIEW

Each of Keene's challenges on appeal was unpreserved in the trial court. An unpreserved error may generally be noticed on appeal if the error is "palpable" and if it "affects the substantial rights of a party." Kentucky Rule of Criminal Procedure (RCr) 10.26. Even then, relief is appropriate only "upon a determination that manifest injustice resulted from the error." *Id.* "For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily noticeable." *Doneghy v. Commonwealth,* 410 S.W.3d 95, 106 (Ky. 2013) (internal citation omitted). "When we engage in palpable error review, our focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Baumia v. Commonwealth,* 402 S.W.3d 530, 542 (Ky. 2013) (internal citation omitted).

## III. ANALYSIS

A. **While the Commonwealth's comments during its opening statement constituted error, it did not rise to palpable error.**

During opening statement, the Commonwealth's Attorney made the following three statements that Keene asserts constituted prosecutorial

3

misconduct. The first statement concerned Angel and the influence Keene had over her:

> I think that once you've heard all the evidence in this case, you're going to see that Angel Keene, the mother of [A.C.] was like a whipped dog.

The next statement concerned A.C. and the differing interviews she gave at Judy's place:

> Jamie Darrell Keene doesn't want the things going on in that household to be seen in the light of day, and so this secrecy and this, 'Oh, you can't believe them, they have told more than one story. We'll get away with this, because you can't believe anything this child has said,' and I am here to tell you when you understand the timing of what she said, and you understand why she said what she said, you'll know which interview she gave was the truthful one.

The last statement concerned Donna and whether or not she had threatened to kick A.C. out of her house if she reported Keene's sexual abuse:

> You're going to hear about Donna Keene, the Defendant's mother, and the efforts that she took. I don't think she will admit to you when I put her on the stand. I don't expect her to, I don't think she's going to be truthful here.

We note that it is well-settled that opening statements and closing arguments are not evidence and prosecutors are given considerable latitude during both. *Stopher v. Commonwealth*, 57 S.W.3d 787, 805-06 (Ky. 2001). However, this latitude does have limits. *See, e.g., Commonwealth v. Mitchell*, 165 S.W.3d 129 (Ky. 2005). This Court has consistently held that, "[i]t is never proper in an opening statement for counsel to argue the case or to give [her]

4

personal opinions or inferences from the facts [she] expects to prove." *Turner v. Commonwealth*, 240 S.W.2d 80, 81 (Ky. 1951).

While the Commonwealth's first comment, referring to Angel as a "whipped dog," may have been harsh, it did not exceed the bounds of a proper opening statement. As such, we find no error in the Commonwealth's first comment.

Next, we discern no error in the Commonwealth's second comment. By telling the jury it would understand which of A.C.'s interviews were truthful based on the timing and the circumstances of the interviews, the Commonwealth's Attorney merely asked the jury to do precisely what it is empaneled to do: evaluate the veracity of the witnesses' testimony based on the evidence presented. As such, the Commonwealth's second comment, although bordering on argument, was not palpably impermissible.

Lastly, the Commonwealth's Attorney inarguably gave her personal opinion as to the veracity of Donna's proposed testimony. We agree with Keene that this comment was improper. Nonetheless, this Court will only reverse a conviction where "the misconduct of the prosecutor [was] so serious as to render the entire trial fundamentally unfair." *Stopher*, 57 S.W.3d at 805 (Ky. 2001). Here, the Commonwealth's comments occurred during its opening statement. Subsequently, the jury heard Donna's testimony, and both parties examined her. Thus, the jury was able to evaluate for itself the veracity of Donna's testimony and was not required to rely on the Commonwealth's opening statement to reach its decision. We hold that, while the

5

Commonwealth's third comment was improper, it was not so egregious as to render the entire trial fundamentally unfair.

## B.    The trial court did not err in permitting the statements of Pam Taylor and Dr. Arwanda Wells.

Keene asserts that the trial court erred in admitting hearsay evidence and allowing the Commonwealth to bolster A.C.'s testimony through the testimony of Pam Taylor (Taylor) and Dr. Arwanda Wells (Dr. Wells). Specifically, Keene bases his assertion on the two witnesses' recitation of what A.C. told them during her interviews at Judy's Place. Keene contends that the testimony is hearsay and that, because there is "no hearsay exception for statements made by an alleged victim of sexual abuse to a 'forensic interviewer' or doctor," the evidence is inadmissible. The Commonwealth concedes that the testimony of both witnesses constituted inadmissible hearsay. However, we disagree with the parties that the evidence was inadmissible.

### 1.    Pam Taylor's testimony.

Taylor testified during direct examination that A.C. changed her story between the April and November interviews because A.C. said she was scared after Keene had threatened her and her mother. According to Taylor, A.C. related to her numerous details regarding incidents of rape and sexual abuse by Keene; she also testified that there was a greater likelihood of recantation when a child still had contact with the person who had abused them.

The Kentucky Rules of Evidence define hearsay as "a statement, other than the one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Kentucky Rule of

6

Evidence (KRE) 803(c). Unless the rules of evidence provide therefor, hearsay is prohibited by KRE 802. Keene argues that Taylor's testimony contained the hearsay statements of A.C., and that none of these statements fall under a valid exception to the hearsay rule.

However, A.C.'s statements, as made clear within the full context of the Commonwealth's direct examination, were not offered into evidence to prove the truth of the matter asserted – i.e., that Keene had threatened A.C. Rather, this testimony was offered to show the effect Keene's threats had on A.C. in order to explain her recantation following her November 2013 interview at Judy's Place. Because this testimony was not admitted to prove the truth of the matter asserted, i.e., that Keene had threated A.C., it did not constitute hearsay.

Furthermore, the testimony did not bolster A.C.'s testimony, as Keene asserts. Taylor did not testify to A.C.'s truthfulness or whether she was, in fact, raped by Keene. Rather, she testified only to what A.C. told her and why A.C. changed her story. Thus, this testimony did not bolster A.C.'s contention that Keene raped her.

Finally, we note that A.C. had already testified to her having been threatened by Donna and Keene, as well as to numerous instances of Keene raping her. For the preceding reasons, we discern no error in the trial court admitting Taylor's testimony.

## 2. Dr. Arwanda Wells.

At trial, Dr. Wells testified that she had performed a physical evaluation on A.C. to determine if she had engaged in sexual activity. A.C.'s examination took place on December 4th, 2013 – less than a month after the allegations of sexual abuse were reported to CPS. Dr. Wells testified that her findings were "non-specific," in that she could not say with whom A.C. had had sex, but she was able to determine that someone had in fact penetrated A.C.'s vagina. Keene asserts that submission of the following testimony by Dr. Wells during the Commonwealth's direct examination constituted error:

| | |
|---|---|
| **Commonwealth Attorney:** | And in fact, did [A.C.] make any statements to you about prior sexual contact? |
| **Dr. Wells:** | Umm, she did. |
| **Commonwealth Attorney:** | And who did she attribute that to? |
| **Dr. Wells:** | She initially told me that a boyfriend, a boyfriend, that she had had sex one time with a boyfriend. That's what she told me. |
| | . . . |
| **Commonwealth Attorney:** | And I note, on the last page of your report you have a number of options that you can check off under summary of physical findings. |
| **Dr. Wells:** | Yes. |
| **Commonwealth Attorney:** | Can you please list for the jury what you did check off and explain what that means? |
| **Dr. Wells:** | Okay, so I checked off "normal exam consistent with history," because she told me in her, when I spoke to her, that she |

8

> said she had had some sexual activity, okay.

We first note that Dr. Wells never attributed any sexual activity with A.C. to Keene. The above testimony was admissible not as evidence of A.C. having had sex with a boyfriend – the truth of the matter asserted – it was offered to explain Dr. Wells's findings that A.C. was sexually active. Thus, because the testimony was not offered to prove the truth of the matter asserted, it is not hearsay. *See* KRE 801(c).

Furthermore, the testimony did not bolster any claim that A.C. or any other witness had previously made. As such, we hold that the trial court did not err by permitting Dr. Wells's testimony. However, we note that, even if Dr. Wells's testimony had constituted error, it would have been harmless because it did not implicate Keene, rather, it provided him a countervailing version of events with which to argue to the jury.

## C. The trial court did not err in admitting evidence of Keene's prior assaultive behavior.

Keene contends that the trial court erred by admitting evidence of his prior assaultive behavior toward A.C., Angel, and others. He challenges the admission of the evidence by asserting that it was improper KRE 404(b) evidence and that its probative value was substantially outweighed by the danger of undue prejudice, thereby violating KRE 403. On the second day of trial, the judge admonished the jury that they should consider the testimony that Keene engaged in assaultive conduct toward A.C., Angel, and others, "only for the limited purpose of determining whether [Keene] utilized such acts, if he

9

did so, to accomplish or facilitate the commission of the crime which he is charged for as a motive for why . . . the alleged victim did not immediately disclose the offenses at the time they had occurred, if they did so." While we note that neither the record before us nor the parties indicate at whose request the trial court admonished the jury, Keene clearly stated during the preceding bench conference that he had no objection to such an admonition.

### 1. KRE 404(b).

Evidence of prior crimes or bad acts must be relevant "for some purpose other than to prove the criminal disposition of the accused . . . ." *Meece v. Commonwealth*, 348 S.W.3d 627, 662 (Ky. 2011). Keene argues that 404(b)(1) permits the introduction of Keene's "bad acts" to show motive only if the motive pertains to Keene, himself – not if the motive pertains to a testifying witness. We agree. KRE 404(b)(1) states:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

It is clear that KRE 404(b)(1)'s "motive" exception pertains to the person who committed the "bad act" – in this case, Keene. Because Keene's acts are at issue, it is Keene's motive that is also at issue – not A.C.'s.

But this does not end our analysis. The statements were admissible under 404(b)(2). KRE 404(b)(2) permits evidence of other crimes, wrongs, or acts to be used "[i]f so inextricably intertwined with other evidence essential to

10

the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." Here, A.C. reported Keene's sexual and physical abuse during her April 2014 interview. A.C.'s April 2014 interview was the primary reason for Keene's indictment and her testimony at trial confirming the information she gave in that interview was the Commonwealth's primary evidence. In his opening statement, Keene asked the jury "that [they] be able to weigh [A.C.'s] conflicting statements, that [they] consider that one or the other may or may not be true, because there is no possible way that both can be true." The Commonwealth was entitled to offer evidence explaining why A.C.'s April 2014 interview differed from her November 2013 interview. In disputing Keene's attack on A.C.'s testimony, evidence of his assaultive behavior was inextricably intertwined with the evidence of rape, and it is clear to us that the two could not have been separated without serious effect on the Commonwealth. Therefore, we discern no error here.

## 2. KRE 403.

Keene also asserts that evidence of his assaultive behavior toward A.C., her mother, and others was inadmissible under KRE 403 because it was more prejudicial than probative. KRE 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

11

As this Court noted in its decision in *Webb v. Commonwealth*, the trial court must make three basic inquiries when engaging in a KRE 403 determination:

> (i) assessment of the probative worth of the evidence whose exclusion is sought; (ii) assessment of the probable impact of specified undesirable consequences likely to flow from its admission (i.e., "undue prejudice, confusion of the issues, or misleading the jury, . . . undue delay, or needless presentation of cumulative evidence"); and (iii) a determination of whether the product of the second judgment (harmful effects from admission) exceeds the product of the first judgment (probative worth of evidence).

387 S.W.3d 319, 325-26 (Ky. 2012).

KRE 403 "does not offer protection against evidence that is merely prejudicial in the sense that it is detrimental to a party's case." *Id.* Evidence of Keene's assaultive behavior was probative as to why A.C. gave inconsistent statements during her interviews at Judy's Place. Any negative impact in admitting such testimony was diluted by the trial judge admonishing the jury. "Jurors are presumed to have followed an admonition." *Tamme v. Commonwealth*, 973 S.W.2d 13, 26 (Ky. 1998). By admonishing the jurors not to base their opinions as to the charged crimes on Keene's assaultive behavior, the judge sanitized any concerns of undue prejudice, confusion of issues, or misleading of the jury. Therefore, we hold that the evidence of Keene's assaultive behavior was properly permitted and did not violate KRE 403.

12

**D.** **The trial court did not err by permitting John Preston's testimony regarding CPS's investigation into Keene's domestic abuse. The trial court did err by permitting John Preston's testimony regarding Keene's incarceration; however, that error was harmless.**

Keene argues that the trial court erred by admitting the testimony of social worker, John Preston (Preston). Specifically, Keene complains that Preston's testimony regarding his incarceration violated KRE 403 because it was more prejudicial than probative.

During the Commonwealth's direct examination, Preston, who took the witness stand before A.C., was asked where A.C. and Angel were living when CPS began its investigation. Preston stated, "She stayed in the trailer." The Commonwealth prompted, "...with?" Preston then replied, "At that time-- She was by herself at that time because I think Mr. Keene was back incarcerated." The Commonwealth then asked, "To your knowledge, did he ever get out of jail or come back to live in that residence with Angel Keene again?" To which Preston responded, "Not after that time, not to my knowledge."

Additionally, Keene complains that the trial court erred in admitting Preston's testimony that, in performing a domestic violence assessment, he looked at Keene's and Angel's arrest records, and that allegations of the couple's domestic violence had been substantiated during his investigation.

Preston's testimony regarding Keene's domestic violence was not more prejudicial than probative. *See* KRE 403. His testimony regarding CPS's investigation into Keene's and Angel's domestic violence was probative into the procedure CPS initiated which, ultimately, led to A.C.'s first and second interviews. The Commonwealth is entitled to present a complete picture of the

13

crime charged and the investigation leading to those charges. *Adkins v. Commonwealth*, 96 S.W.3d 779, 793 (Ky. 2003). "[A] jury cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Kerr v. Commonwealth*, 400 S.W.3d 250, 262 (Ky. 2013) (citing *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)).

However, Preston's testimony revealing the fact that Keene was incarcerated at the time Preston interviewed him was more prejudicial than probative. *See* KRE 403. As we have noted elsewhere in this opinion, the fact that Keene was or was not incarcerated was entirely irrelevant to whether or not he raped A.C. Thus, this evidence was not probative, rather, it required the jury to ignore the fact that Keene was incarcerated for crimes for which he was not on trial in the instant matter. However, while permitting this testimony was error, the error was harmless because A.C. had already testified to Keene having been incarcerated and having seen him assault Angel. Furthermore, Keene confirmed at trial that he was incarcerated for domestic violence against Angel.

As we noted above, Keene's assaultive behavior was relevant as to why A.C. did not allege that Keene raped her during her first interview but then later recanted. While Preston was entitled to testify to CPS's investigation into Keene, he exceeded that entitlement by testifying to Keene's incarceration. Evidence that Keene was incarcerated was more prejudicial than probative. *See* KRE 403. We hold that permitting Preston's testimony regarding Keene's

14

assaultive behavior was not error. And although permitting Preston's testimony regarding Keene's incarceration was error, that error was harmless.

### E. The trial court erred by admitting Detective Kevin Newsome's testimony regarding Keene's invocation of his right to remain silent. However, that error did not rise to palpable error.

During the Commonwealth's direct examination of Detective Kevin Newsome (Detective Newsome), the Commonwealth's Attorney asked two questions that Keene contends were improper and require reversal of his conviction. Keene complains that the trial court erred when it admitted Detective Newsome's testimony regarding Keene's incarceration and his invocation of his right to remain silent under the Fifth and Fourteenth Amendments to the United States Constitution and Section Eleven of the Kentucky Constitution. We agree. However, admitting Detective Newsome's testimony did not constitute palpable error.[1]

### 1. Testimony related to Keene's incarceration.

During the Commonwealth's direct examination of Detective Newsome, the Commonwealth elicited the following testimony:

**Commonwealth Attorney:** Ok and where was Mr. Keene located when you conducted that interview?

**Detective Newsome:** He was in the Pike County Detention Center.

We first note that Detective Newsome's testimony that Keene was in the Pike County Detention Center violated KRE 403. KRE 403 states that relevant evidence may be excluded if its probative value is substantially outweighed by

---

[1] We note that the Commonwealth did not address this issue in its brief.

15

the danger of undue prejudice. Here, there was nothing probative in asking Detective Newsome where Keene was located when he was interviewed. However, as we discussed above, evidence that Keene had assaulted Angel was inextricably intertwined with the Commonwealth's primary evidence: A.C.'s testimony regarding her second interview. *See* KRE 404(b)(2). While Detective Newsome's testimony regarding Keene's incarceration was more prejudicial than probative, it did not result in manifest injustice. *See* RCr 10.26. In so deciding, we note that A.C. had testified to Keene's incarceration and Keene later confirmed his incarceration on the witness stand. Therefore, we hold that, although error, Detective Newsome's testimony did not rise to the level of palpable error.

### 2. Testimony related to Keene's invocation of his right to remain silent.

Next, we address Detective Newsome's statement regarding Keene's invocation of his *Miranda* rights.[2] During its direct examination, the Commonwealth continued questioning Detective Newsome regarding his interview with Keene:

| **Commonwealth Attorney:** | Ok, now about how long did your interview with him last? |
|---|---|
| **Detective Newsome:** | It was very short, I don't know, it was not a long interview, at that point he invoked his *Miranda* rights. |

We first note that "[t]he Commonwealth is prohibited from introducing evidence or commenting in any manner on a defendant's silence once that

---

[2] *See Miranda v. Arizona,* 384 U.S. 436 (1966).

defendant has been informed of his rights and taken into custody." *Hunt v. Commonwealth*, 304 S.W.3d 15, 35 (Ky. 2009). However, as this Court stated in *Nunn v. Commonwealth*: "Not every isolated instance referring to post-arrest silence will be reversible error. Typically reversal is warranted where the prosecutor has repeatedly mentioned and emphasized an accused's post-arrest silence." 461 S.W.3d 741, 751 (Ky. 2015) (citing *Wallen v. Commonwealth*, 657 S.W.2d 232, 233 (Ky. 1983)). Moreover, the error is only reversible where "post-arrest silence is deliberately used to impeach an explanation subsequently offered at trial or where there is a similar reason to believe the defendant has been prejudiced by reference to the exercise of his constitutional right." *Wallen*, 657 S.W.2d at 233.

Here, the Commonwealth did not use Keene's invocation of his right to remain silent to impeach an explanation Keene had previously made. In fact, Detective Newsome's testimony was introduced as a result of his own elaboration - not directly elicited by the Commonwealth's question. Thus, we discern no deliberate attempt by the Commonwealth to elicit this testimony. However, we strongly caution the Commonwealth that it should more strictly instruct its witnesses to answer the questions posed to them and not elaborate beyond the scope of the questions presented.

The Commonwealth's question regarding the duration of Keene's interview was entirely irrelevant and most certainly constituted error. However, we stand by our decision in *Nunn*. It does not appear to this Court that the complained-of testimony was "repeated, emphasized, or used as a

17

prosecutorial tool." *Hunt*, 304 S.W.3d at 37. Nor does it appear that Keene was prejudiced in any way by the reference to his invocation of his right to remain silent. *See Nunn*, 461 S.W.3d at 751. Therefore, we hold that the single reference to Keene's invocation of his right to remain silent did not result in palpable error.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Pike Circuit Court in this matter is affirmed.

All sitting. Minton, C.J., Hughes, Keller, Noble and Wright, JJ., concur. Cunningham and Venters, JJ., concur in result only.

COUNSEL FOR APPELLANT:

Stephen W. Owens

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James Hays Lawson
Assistant Attorney General