RENDERED: FEBRUARY 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0850-MR

NICHOLAS SETH PEEK                                      APPELLANT

APPEAL FROM BRECKINRIDGE CIRCUIT COURT
v.         HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 19-CR-00213

COMMONWEALTH OF KENTUCKY                                APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

CALDWELL, JUDGE: Nicholas Seth Peek ("Peek") appeals from a judgment upon a jury verdict convicting him of second-degree assault, alleging error in the trial court's jury instructions. We reverse and remand for further proceedings.

## FACTS

This case arose from an incident in which Peek admittedly shot Michael Kunick ("Kunick").

Peek and his wife, Ashley, were having marital problems. Ashley had an older child, about ten years old at that time. Peek and Ashley also had two children who were toddlers then. On the night in question, Ashley left the marital residence, telling Peek she was going to spend the night at her mother's house. All three children remained at home with Peek.

Later that evening, Ashley texted Peek to say she was going to bed. Peek was suspicious because Ashley usually did not go to bed that early. After the children went to sleep, Peek left them at home to go investigate. He drove to Ashley's mother's home, bringing with him a handgun (which he always carried) and binoculars.

According to Peek, he parked at the fire station rather than in the home's driveway because he did not want to be seen or to make his marital problems worse. He walked towards the home of Ashley's mother to see if Ashley's car was there, since he could not see anything with his binoculars in the dark. As he approached the back patio area by a driveway, he heard someone moaning and thought Ashley was messing with him. He also thought he saw a shadow. He shined his cell phone light and discovered Ashley and Kunick having sex outside the back of the home. What happened immediately after this discovery is disputed.

According to Ashley and Kunick, Peek shot a naked and unarmed Kunick before Kunick even had a chance to stand up. Ashley and Kunick denied that Kunick had used or threatened to use any force against Peek. In contrast, Peek claimed Kunick got up with his fists clenched and started throwing punches at Peek before Peek fired a shot at Kunick. Despite Kunick's undisputed nudity, Peek later stated he believed Kunick had something in one hand and Peek feared for his life. According to Peek, something hit his arm, resulting in his feeling pressure on his arm before Peek fired the initial shot. He did not know if the initial shot hit Kunick and he was concerned about Ashley's safety, especially since he knew Kunick was a convicted felon.

Despite these factually conflicting accounts, Peek indisputably chased Kunick around the yard after firing the initial shot and Peek continued to fire additional shots until the clip was emptied. Peek later said he repeatedly told Kunick to get down, but Kunick did not comply.

Kunick claimed he simply ran away, trying to evade the gunfire. According to Peek, he fired warning shots not intended to hit Kunick and Kunick would occasionally turn around to "square up" and face him, which Peek interpreted as a threatening gesture. Peek finally quit chasing Kunick when Kunick hid in some weeds. When later asked why he chased down someone who

was running away, Peek replied he was not trained to run away from a fight. (Peek was formerly a deputy jailer.)

After Kunick hid in the weeds, Peek found Kunick's discarded clothes and removed them from the scene to turn them into police. Peek claims he did this so the police might find identification in the pants. Peek then drove back home. Meanwhile, Ashley had already driven home to check on the children. While there, she requested help from her brother Tommy Salmon ("Tommy") who was at his girlfriend's house next door.

When Peek arrived home, he tried to keep Ashley and the children from leaving the home. Tommy intercepted Peek, keeping Peek from interfering with the exit of Ashley and the children. Ashley and the children went to Tommy's girlfriend's home.

The police investigated the incident after receiving 911 calls, including one from Peek. Peek and Kunick both received medical treatment. Kunick had a gunshot injury to his neck. The bullet had gone through the back of his neck and came out one side of his neck in a manner suggesting he was shot from behind and above according to an investigating officer. Peek had injuries to one arm – consisting of one superficial cut along with a longer, deeper gash.

A pocket-knife and methamphetamine were found in Kunick's pants which Peek turned into police. Kunick later admitted at trial that both items

belonged to him although he denied having access to these items during the incident. Police reported finding some blood in Peek's home and in his vehicle, but none was found at the scene of the shooting incident. Investigating officers saw no wounds on Peek's face when they initially investigated despite Peek's alleging Kunick hit him in the face as well as his arm. However, the police officers saw blood and wounds on Peek's arm, though Tommy and Ashley later denied seeing blood or wounds on Peek when he first arrived home following the shooting incident.

Peek was indicted for assault of Kunick and for wanton endangerment of Ashley. The case proceeded to trial before a jury.

The parties submitted proposed jury instructions which they discussed with the trial court during a conference in chambers. The Commonwealth requested the court instruct the jury that the Commonwealth did not bear the burden of disproving self-defense. Peek requested the court instruct the jury on fourth-degree assault, as a lesser-included offense of second-degree assault. The trial court gave the Commonwealth's requested instruction about it not bearing the burden to disprove self-defense. But the trial court denied Peek's request for an instruction on fourth-degree assault.

The jury found Peek guilty of second-degree assault and recommended a sentence of ten years' imprisonment. It also found him guilty of

second-degree wanton endangerment, a Class A misdemeanor. KRS[1] 508.070(2). The trial court entered judgment in accordance with the jury verdict. Peek filed a timely appeal, claiming error in the trial court's jury instructions. He argues this Court should reverse his convictions and remand the case for a new trial with directions to remove the burden of proof instruction and to instruct the jury on fourth-degree assault as a lesser-included offense.

Further facts will be provided as necessary in our analysis.

## ANALYSIS

### Standard of Review

We review a trial court's decision whether to give a jury instruction for abuse of discretion, but we review the substantive content of jury instructions *de novo*. *Gribbins v. Commonwealth*, 483 S.W.3d 370, 373 (Ky. 2016).

Erroneous jury instructions are presumed to be prejudicial, though this presumption can be rebutted upon a showing the error was harmless. *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018). However, if a jury instruction issue was not properly preserved by raising it to the trial court, appellate courts are limited to reviewing the issue solely for palpable error resulting in manifest injustice. *Id.* (citing RCr[2] 10.26).

---

[1] Kentucky Revised Statutes.

[2] Kentucky Rules of Criminal Procedure.

With these parameters in mind, we consider Peek's allegations of error in the trial court's jury instructions.

**Trial Court Misstated the Law Applicable to this Case in Instructing the Jury the Commonwealth Did Not Bear the Burden of Disproving Self-Defense**

Peek contends the trial court erred in giving, upon the Commonwealth's request, a jury instruction entitled "Burden of Proof – Defenses" which stated: "The Commonwealth does not bear the burden of disproving that the Defendant acted in self-defense."

Peek quotes *Gribbins*, 483 S.W.3d at 375: "[W]here sufficient evidence has been presented by a defendant to justify an instruction on self-protection, the Commonwealth is required to disprove that defense beyond a reasonable doubt, and its absence becomes an element of the offense." As the Commonwealth did not challenge Peek's entitlement to a self-protection instruction, Peek argues the instruction misstates the law by stating the Commonwealth was not required to disprove self-defense under the facts and circumstances of this case.

Peek emphasizes that his defense centered on his shooting at Kunick because he believed that was necessary to protect himself against death or serious physical injury. *See* KRS 503.050 (defining when use of force, including deadly

force, is justifiable to protect oneself);[3] KRS 503.020 (justification is a defense). Peek notes the Commonwealth did not dispute his right to a self-defense instruction. He also finds no fault with the second-degree assault instruction given, which required a finding that Peek was not privileged to act in self-protection to convict. However, he contends the mandatory requirement of lack of privilege to act in self-protection in the second-degree assault instruction was undermined and contradicted by the burden of proof instruction stating: "The Commonwealth does not bear the burden of disproving that the Defendant [Peek] acted in self-defense."

Peek surmises the trial court and Commonwealth thought the burden of proof instruction was consistent with KRS 500.070. KRS 500.070 states:

> (1) The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt, except as provided in subsection (3). This provision,

---

[3] KRS 503.050 states in relevant part:

(1) The use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.

(2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant believes that such force is necessary to protect himself against death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055.

. . .

(3) A person does not have a duty to retreat prior to the use of deadly physical force.

however, does not require disproof of any element that is entitled a "defense," as that term is used in this code, unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal.

(2) No court can require notice of a defense prior to trial time.

(3) The defendant has the burden of proving an element of a case only if the statute which contains that element provides that the defendant may prove such element in exculpation of his conduct.

Peek submits the trial court took note of KRS 500.070(1)'s language indicating the Commonwealth was not required to disprove any element "entitled" a defense, but the trial court overlooked the rest of the same sentence in KRS 500.070(1): "[U]nless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal."

Peek argues that absent Ashley's and Kunick's conflicting testimony, he would be entitled to a directed verdict of acquittal based on his testifying to firing his gun because he believed it necessary to protect himself against death or serious physical injury. Therefore, he asserts the Commonwealth did have the burden of proving that he was not privileged to act in self-protection and the "Burden of Proof – Defenses" instruction misstated the law applicable to this case.

Noting the presumption that erroneous jury instructions are prejudicial, *see, e.g.*, *Caudill*, 540 S.W.3d at 367, Peek contends the Commonwealth cannot show any error in this regard was harmless.

In response, the Commonwealth does not clearly and explicitly argue any error was harmless. However, it argues any issue about the "Burden of Proof – Defenses" instruction was not properly preserved.

The Commonwealth also contends this instruction was not erroneous because the instruction "parroted the language of KRS 500.070(1)." But the Commonwealth fails to address the portion of KRS 500.070(1) setting forth the qualification "unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal." The Commonwealth also does not challenge Peek's assertion that absent Kunick's and Ashley's conflicting testimony, Peek's testimony would entitle him to a directed verdict of acquittal based on self-defense.

The Commonwealth argues the second-degree assault instruction "properly relayed the burden of proof requirement." It cites *LaPradd v. Commonwealth*, 334 S.W.3d 88 (Ky. 2011), which states that when self-defense is raised as a defense: "The burden of proof is assigned by including as an element of the instruction on the offense 'that he was not privileged to act in self-

-10-

protection.'" *See id*. at 90 (quoting *Commonwealth v. Hager*, 41 S.W.3d 828, 833 n.1 (Ky. 2001); 1 COOPER, *Kentucky Instructions to Juries (Criminal)* § 3.21 (4th ed. Anderson 1993)).

The Commonwealth notes the second-degree assault instruction required a finding: "that he was not privileged to act in self-protection." It also contends the "Burden of Proof – Defenses" instruction given did not shift the burden of proof.

Despite defense counsel's expressions of concern about potential jury confusion and the trial court's stating it noted an objection to this instruction, the Commonwealth asserts that the issue is not preserved for review. The Commonwealth asserts defense counsel never explicitly objected to the burden of proof instruction or stated specific grounds for the objection. *See* RCr 9.54(2).

In response, Peek points out in his reply brief that when the trial court asked for any objections to jury instructions, defense counsel stated:

> And we do not believe that it's appropriate to have the instruction number, I guess it's probably number six now, "Burden of Proof – Defenses.' I've never . . . I think we've all done plenty of self-defense cases in the past. I've never seen one. And I'm afraid that the jury will then try to figure out what the burden is and, you know, do we have to prove something beyond a reasonable doubt? It's just going to ask that more questions more than anything else.

Peek points out these quoted comments were made in response to the trial court's inquiry about objections to jury instructions. He suggests these comments about never previously seeing a similar instruction indicate this instruction was contrary to law. He also notes the comments express concerns that this burden of proof instruction "would make the jury question who carried the burden [of proof], which is the exact same complaint repeated on appeal."

Peek insists the issue is preserved. But in the alternative, if this Court believes the issue was not properly preserved, he requests review for palpable error pursuant to RCr 10.26. Peek contends the burden of proof instruction amounts to palpable error since the error is, at least in his view, obvious and serious. *See Nunn v. Commonwealth of Kentucky*, 461 S.W.3d 741, 751 (Ky. 2015) (discussing how a palpable error must be not only obvious, but also serious, resulting in manifest injustice – meaning the error was shocking or "jurisprudentially intolerable" and there is a substantial possibility it affected the verdict or rendered the trial fundamentally unfair).

Like his initial appellant brief, Peek's reply brief points to the lack of dispute that he was entitled to an instruction on self-defense and quotes *Gribbins*.[4]

---

[4] *See* 483 S.W.3d at 375: "[W]here sufficient evidence has been presented by a defendant to justify an instruction on self-protection, the Commonwealth is required to disprove that defense beyond a reasonable doubt, and its absence becomes an element of the offense."

-12-

The reply brief also points out the Commonwealth does not even address in its brief Peek's argument that the burden of proof instruction contravened *Gribbins*.

Having considered the parties' arguments, we first address preservation issues. We reject the Commonwealth's argument that no objection was made, and no grounds were stated. Regardless of whether defense counsel used the word "object," defense counsel responded to the trial court's asking about objections and expressed concerns about this instruction – including the potential to confuse the jury about the burden of proof. In our view, defense counsel effectively objected to the "Burden of Proof – Defenses" instruction and stated grounds for doing so.

However, defense counsel did not make all the specific arguments raised on appeal to the trial court. Defense counsel did not specifically argue to the trial court that the burden of proof instruction contravened *Gribbins* or similar precedent. Nor did he argue the trial court failed to properly consider the entirety of KRS 500.070(1), specifically the qualification "unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal."

Since some specific appellate arguments regarding the "Burden of Proof – Defenses" instruction were not presented to the trial court, some might

view preservation as questionable given the specificity requirements in RCr

9.54(2):

> No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, **stating specifically the matter to which the party objects and the ground or grounds of the objection**.

(Emphasis added.)

But despite Peek's not making all the same specific arguments to the trial court, recent binding precedent from our Supreme Court suggests the allegation of error in the "Burden of Proof – Defenses" instruction was preserved. As stated in *Gasaway v. Commonwealth*, 671 S.W.3d 298, 313-14 (Ky. 2023):

> This Court has long held that appeals are taken from judgments, not from unfavorable rulings as such. When confronted with a claim of lower court error, appellate courts review issues, not arguments. An issue is legally defined as [a] point in dispute between two or more parties. For the purposes of appeal, an issue may take the form of a separate and discrete question of law or fact, or a combination of both. By contrast, argument is defined as [a] statement that attempts to persuade by setting forth reasons why something is true or untrue, right or wrong, better or worse, etc.; esp., the remarks of counsel in analyzing and pointing out or repudiating a desired inference, made for the assistance of a decision-maker.
>
> Allegations of error (also known as issues, claims, or questions) are supported by arguments. Once a . . . claim is properly presented, a party can make any

argument in support of that claim; parties are not limited to the precise arguments they made below. Indeed, [a] litigant seeking review in this Court of a claim *properly raised in the lower courts* thus generally possesses the ability to frame the question to be decided in any way he chooses, without being limited to the manner in which the question was framed below. Indeed, appellate review . . . is to be conducted in light of all relevant precedents, not simply those cited to, or discovered by the trial court.

However, when a party fails to raise an issue or otherwise preserve an allegation of error for review, the issue is forfeited.

(Emphasis in original) (internal quotation marks and citations omitted). *See also Ellis v. Commonwealth*, 694 S.W.3d 294, 300 (Ky. 2024) (indicating our Supreme Court reviews "issues, not arguments"). Both *Gasaway* and *Ellis* involved suppression issues rather than jury instruction issues, but these holdings are not expressly limited to the context of suppression issues.

Assuming issues about the "Burden of Proof – Defenses" instruction were properly preserved and reviewing *de novo*, the content of this instruction was erroneous. Considering, and it is undisputed, Peek was entitled to a self-defense instruction, the statement that the Commonwealth did not bear the burden of disproving self-defense contravened *Gribbins* – published precedent from our Supreme Court which we and the trial court are bound to follow. *See* SCR[5] 1.030(8)(a); 1.040(5). Moreover, since Peek presented evidence of self-defense

[5] Rules of the Kentucky Supreme Court.

which would support a directed verdict of acquittal absent countervailing evidence, the burden of proof instruction was not consistent with KRS 500.070(1) as set forth in its entirety. Clearly, the content of the burden of proof instruction given was erroneous and failed to properly instruct the jury about the law applicable to this case.

Furthermore, we cannot say that the presumption that this instructional error was not harmless has been rebutted – especially since criminal liability for assault hinged on whether Peek's admitted shooting of Kunick was justifiable based on self-defense. Even if we assume that error in the burden of proof instruction was not preserved, since specific arguments about *Gribbins* and the full text of KRS 500.070(1) were not made to the trial court, we must still reverse as the error was palpable and resulted in manifest injustice. *See* RCr 10.26.

Under these facts, with the instruction clearly contravening both *Gribbins* and KRS 500.070(1), the error is obvious. Furthermore, since Peek's criminal liability for assault hinged on whether he was privileged to act in self-protection, the error is also a serious one which potentially affected the verdict and cast doubt on the fundamental fairness of the trial. *See Nunn*, 461 S.W.3d at 751.

In sum, based on the evidence of record before us and binding precedent, reversal is required due to error in the "Burden of Proof – Defenses" instruction given. Next, we address the parties' arguments about the trial court's

refusal to instruct the jury on fourth-degree assault as a lesser-included offense of second-degree assault.

## Trial Court Erred in Refusing to Instruct on Fourth-Degree Assault

Peek requested an instruction on fourth-degree assault as a lesser-included offense of second-degree assault. Peek proffered a written instruction stating if the jury did not find Peek guilty of second-degree assault, the jury could find Peek guilty of fourth-degree assault only if it found beyond a reasonable doubt A) Peek caused physical injury to Kunick by shooting him in the neck with a handgun, and B) the handgun was a deadly weapon and C):

> Though otherwise privileged to act in self-protection the Defendant was mistaken in his belief that it was necessary to use physical force against Michael Kunick in self-protection, or in protection of another, or in his belief in the degree of force necessary to protect himself and that when he fired a handgun at Michael Kunick that struck him in the neck, Nicholas Seth Peek failed to perceive a substantial and unjustifiable risk that he was mistaken in that belief, and that his failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation.

The Commonwealth objected to Peek's request for a fourth-degree assault instruction, arguing that such an instruction was not supported by the evidence. The Commonwealth argued the proof only supported two possible outcomes: either 1) acquittal because Peek was privileged to act in self-defense due to Kunick being armed and attacking Peek, or 2) conviction of second-degree

-17-

assault because Peek did not act in self-defense but shot Kunick despite Kunick's being unarmed and not attacking Peek. Ultimately, the trial court agreed with the Commonwealth's argument that a fourth-degree assault Instruction was not supported by the evidence and declined to give such an instruction.

Peek argues he was prejudiced because he admitted to some elements of an assault crime – including shooting Kunick with a gun, conceded to be a deadly weapon – but the trial court refused to instruct on fourth-degree assault as a lesser-included offense of second-degree assault. Peek points out the trial court noted but denied his motion to instruct the jury on fourth-degree assault as a lesser-included offense to second-degree assault and to allow the jury to consider imperfect self-defense. He therefore contends the issue of entitlement to a fourth-degree assault instruction is properly preserved for our review. We agree, also noting that Peek proffered a written instruction on fourth-degree assault to the trial court.

Noting defense counsel conceded that Peek shot Kunick with a gun and that the gun was a deadly weapon in closing argument, Peek contends that what was really at issue was his mental state – including whether his shooting the gun was reckless.

Peek asserts that even if the jury believed Kunick's account of the incident and that Kunick was a victim of assault, the jury should have been able to

consider all possible explanations for how the assault could have occurred. For example, he submits that he could have shot Kunick under a panicked and mistaken belief that he needed to protect himself. He also suggests that the first shot he fired might have come "from instinct and not a developed intention" and that he fired additional shots in an instinctive manner to warn Kunick and give Peek space to retreat. He points out the later shots did not hit Kunick, so he argues maybe the initial shot (which did hit Kunick) was not intended to hit Kunick either.

In essence, he suggests he could have acted recklessly rather than intentionally in shooting Kunick.[6] He quotes KRS 501.020(4) which defines *recklessly* as follows:

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

Due to the conflicting testimony about what happened preceding the firing of the first shot and possible questions about Peek's mental state at the time,

---

[6] Peek's opening brief appears to primarily focus on whether the act of shooting itself was intentional, rather than whether the result of his firing shots (such as a shot hitting Kunick or causing injury) was intentional. To the extent that he argues on appeal that the evidence might support a finding that he did not intentionally fire shots, we have not been shown where Peek made that specific argument to the trial court. Nonetheless, the more general issue about whether an instruction on fourth-degree assault should have been given was clearly preserved.

Peek submits the trial court erred in denying his request to instruct the jury on fourth-degree assault.

In response, the Commonwealth contends that Peek is arguing for a "straight" fourth-degree assault instruction based on KRS 508.030 for the first time on appeal, despite asking the trial court for an instruction on fourth-degree assault based on imperfect self-defense. KRS 508.030(1)(b) states a person is guilty of fourth-degree assault when: "With recklessness he causes physical injury to another person by means of a deadly weapon or a dangerous instrument."

The Commonwealth argues any error in not giving a "straight" fourth-degree assault instruction is not preserved.[7] So, it confines its argument to addressing what it perceives to be the preserved issue of imperfect self-defense.

Addressing imperfect self-defense, the Commonwealth cites KRS 503.120(1) which states:

_____

[7] We presume a "straight" instruction on fourth-degree assault is one asking whether the jury finds the defendant acted recklessly in causing the victim's injury and was not privileged to act in self-defense – instead of an instruction asking the jury to determine whether the defendant caused injury by a particular means in imperfect self-defense (though otherwise privileged to act in self-protection, the defendant was mistaken about the need for force or the degree of force and the defendant failed to perceive a substantial and unjustifiable risk that his belief was mistaken, resulting in a gross deviation from the standard of care). *See* sample fourth-degree assault instructions in 1 COOPER & CETRULO, *Kentucky Jury Instructions* §§ 11.09-11.10 (2023). *See also Commonwealth v. Hasch*, 421 S.W.3d 349, 356 (Ky. 2013) (citations omitted) ("Under the straight theory of reckless homicide, KRS 507.050(1), a reckless failure to perceive the risk that the defendant's actions would result in the victim's death supplies the element of recklessness necessary to sustain a reckless homicide conviction. Under the imperfect self-defense theory of reckless homicide, the defendant knows that his conduct could cause another person's death and he actually believes that the use of force is necessary to protect himself from another person.").

When the defendant believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.

The Commonwealth contends the evidence did not support an instruction on fourth-degree assault based on imperfect self-defense. The Commonwealth asserts the jury could either believe Ashley's and Kunick's account of Peek's having shot a naked, unarmed man who was not attacking him or it could believe Peek's account of Kunick being armed and attacking him before Peek fired the first shot. The Commonwealth also argues no other evidence supports Peek's testimony and it suggests his theory of defense is ridiculous, not credible, and inconsistent with the physical evidence. It contends there was no evidence of a mistaken belief; instead, if the jury believed Kunick attacked Peek with a weapon, they must acquit Peek on assault charges.

The Commonwealth contends Peek presented an all-or-nothing defense forcing the jury to either accept Peek shot Kunick in self-defense upon a belief he was being attacked or not. It asserts that lesser-included offense

instructions are not warranted for such all-or-nothing scenarios, citing *Taylor v. Commonwealth*, 671 S.W.3d 36, 45 (Ky. 2023).[8]

The Commonwealth argues there is no evidence to support imperfect self-defense.[9] It also contends the trial court did not abuse its discretion in refusing to give the fourth-degree assault instruction especially given the lack of corroboration of Peek's testimony, citing *Brafman v. Commonwealth*, 612 S.W.3d 850, 857-59 (Ky. 2020) (no abuse of discretion in trial court's refusal to instruct jury on affirmative defense of voluntary intoxication in part because the only evidence supporting this defense was the uncorroborated testimony of the defendant).[10]

---

[8] In *Taylor*, our Supreme Court ultimately held the trial court had abused its discretion in refusing to instruct the jury on a lesser-included offense. Yet, the majority stated in concluding its opinion: "When the defendant's testimony is of such a nature that 'the evidence presents an all-or-nothing proposition,' a lesser-included offense instruction is not warranted." 671 S.W.3d at 45 (quoting *Swan v. Commonwealth*, 384 S.W.3d 77, 100 (Ky. 2012)). However, *Taylor* provided additional guidance which does not necessarily call for affirming the trial court's refusal to give the requested lesser-included offense instruction here as we discuss later.

[9] The Commonwealth notes that the trial court instructed the jury on self-defense, despite the lack of corroboration of Peek's testimony relating to self-defense. However, the Commonwealth does not explain its assertion of there being no evidence to support a finding of imperfect self-defense other than arguing the jury had to fully accept Peek's account or the opposing account of Peek and Ashley. Though perhaps not specifically articulated in Peek's briefs, however, a reasonable juror might construe some evidence as supporting a finding of imperfect self-defense – such as Peek's admitting to not seeing what, if anything, was in Kunick's hand and to responding to the unclothed Kunick's swinging fists by shooting a gun.

[10] Our Supreme Court ultimately reversed based on prosecutorial misconduct in *Brafman*, 612 S.W.3d at 863, although it held the trial court had not abused its discretion in refusing to instruct on voluntary intoxication. Though it noted the lack of corroboration of the defendant's testimony about intoxication, it also noted "her intoxication would have been strongly

-22-

Peek does not explicitly respond to the Commonwealth's arguments about his request for a fourth-degree assault instruction in his reply brief, which states it would address only those matters raised in the Commonwealth's brief if further comment or additional citation of authorities was needed.[11]

Despite the parties' commendable efforts to argue issues supported by citations to legal authority and references to specific portions of the record,[12] the appellate briefs do not fully address some issues which come to mind based on the factual scenario here – most notably the possibility that self-defense was not

corroborated had her counsel cross-examined Detective Steward and asked his observations at the time of arrest, but Brafman's counsel did not question Steward at all." 612 S.W.3d at 859.

[11] To the extent that Peek has failed to specifically argue on appeal that a fourth-degree assault instruction should have been given on the basis of imperfect self-defense, the allegation of error in not giving a fourth-degree assault instruction was nonetheless preserved for appeal since Peek clearly asked the trial court to instruct on fourth-degree assault based on imperfect self-defense. *See Ellis*, 694 S.W.3d at 300 ("Although the specific argument that the police failed to adhere to Ellis' invocation of counsel was not made in the appellate briefing before this Court, it was preserved in Ellis' motion before the trial court.").

[12] Though the parties' briefs mostly appear to comply with governing Rules of Appellate Procedure ("RAP"), the reply brief does not contain a word count certificate despite being over 4 pages in length. *See* RAP 15(C); RAP 31(G)(1)-(2)(b). However, any lack of compliance with appellate briefing rules here is *de minimus* and we decline to issue any sanctions. Nonetheless, we encourage counsel to review the Rules of Appellate Procedure, briefing checklists, and Basic Appellate Handbook (especially pages 25-26 regarding word count certificates) available on our court website. https://www.kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx (last accessed Nov. 15, 2024).

simply an all-or-nothing issue in which the jury must either fully accept Peek's account or fully accept that of Ashley and Kunick.[13]

Peek does not explicitly address whether a jury might not fully accept either account or might accept only parts of the same witness's testimony. He does not argue, for example, that a jury might reject his testimony that Kunick appeared to have a weapon in his hand, but believe his testimony that Kunick attacked or was about to attack Peek with fists before the firing of the first shot.

Moreover, though Peek's argument for entitlement to the fourth-degree assault instruction in his appellant brief suggests a reasonable jury could find that he was mistaken in his belief about needing to use force to protect himself, Peek never specifically asserts a reasonable jury might conclude he was mistaken in his belief that he needed to use **deadly** force.

Nonetheless, we agree with Peek's general argument that the trial court erred in not instructing the jury on fourth-degree assault based on the record

---

[13] *See Gillispie v. Commonwealth*, 212 Ky. 472, 279 S.W. 671, 672 (1926) ("The jury was not required to believe all or none of the testimony of the witnesses. In their discretion they may believe any part or all of the testimony of any of the witnesses, or may disbelieve all of it."). *See also Taylor*, 671 S.W.3d at 43-44 (footnote omitted) ("But the totality of the evidence also did not establish an all-or-nothing proposition. A reasonable juror could have accepted the extent of A.P.'s injuries, while disbelieving her account of events, and thus found that Taylor did not manifest either an 'extreme indifference to the value of human life' or that his conduct created 'substantial danger of death or serious physical injury[.]' KRS 508.060(1). Nonetheless, a reasonable juror could have believed from the evidence that Taylor's conduct did create a substantial danger of physical injury. KRS 508.070(1). Therefore, there was evidence in the record to support a conviction for second degree wanton endangerment.").

before us and considering applicable law which we discuss below. Moreover, we conclude this error was neither unpreserved nor harmless especially considering its effect as compounded by the erroneous "Burden of Proof – Defenses" instruction.

Peek's request for a fourth-degree assault instruction was preserved by motion and his proffered instruction. The instruction included language alluding to imperfect self-defense in a manner encompassing the statutory definition of *recklessness* in KRS 501.020(4) in asking the jury to decide whether:

> Though otherwise privileged to act in self-protection the Defendant was mistaken in his belief that it was necessary to use physical force against Michael Kunick in self-protection, or in protection of another, or in his belief in the degree of force necessary to protect himself and that when he fired a handgun at Michael Kunick that struck him in the neck, Nicholas Seth Peek **failed to perceive a substantial and unjustifiable risk** that he was mistaken in that belief, and that **his failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation**.

(Emphasis added.) In sum, we consider the issue of whether Peek was entitled to a fourth-degree assault instruction on recklessness or imperfect self-defense to be properly preserved by his proffered instruction. *See* RCr 9.54(2).

A trial court should instruct juries on all lesser-included offenses supported by evidence. *See Gribbins*, 483 S.W.3d at 373. *See also Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013) (Both trial courts and appellate courts must consider "whether the evidence would permit a reasonable juror to

-25-

make the finding the instruction authorizes" in determining whether a lesser-included instruction should be given.).

A defendant is only entitled to a lesser-included offense instruction if: "considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Hudson v. Commonwealth*, 385 S.W.3d 411, 416 (Ky. 2012) (quoting *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998)). In determining if a defendant is entitled to a lesser-included instruction, the evidence must be construed in the light most favorable to the defendant. *Taylor*, 671 S.W.3d at 41 (citing *Allen v. Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011)).

Considering the totality of the evidence in Peek's favor, a jury might have a reasonable doubt about whether Peek was guilty of second-degree assault but nonetheless believe beyond a reasonable doubt that he was guilty of fourth-degree assault. Even if the jury did not believe beyond a reasonable doubt that Peek had intentionally caused Kunick injury with a deadly weapon and was not privileged to act in self-protection, a jury might believe beyond a reasonable doubt that Peek caused injury with the deadly weapon with recklessness relating to imperfect self-defense. *See* KRS 508.020; KRS 508.030; KRS 503.050; KRS 503.120(1). For instance, if the jury believed Kunick attacked or threatened to

-26-

attack Peek with fists before Peek shot Kunick with a gun, but the jury disbelieved Peek's testimony about seeing something in Kunick's hand, the jury might reasonably find Peek failed to perceive a substantial and unjustifiable risk. The jury might reasonably find that Peek's belief he needed to use deadly force to protect himself was mistaken. And this failure to perceive the risk accurately reflected a gross deviation from a reasonable person's standard of care under the circumstances. *See* KRS 503.120(1).

Consistent with the proffered instruction, a jury could reasonably find recklessness in the failure of Peek to perceive a substantial and unjustifiable risk that his belief in the necessity of using deadly force, or any force, was mistaken. This failure to perceive such a risk could be found by the jury to be a gross deviation from the standard of care a reasonable person would observe under the same circumstances. *See* KRS 508.030; KRS 503.120(1).

Though we primarily reverse based on the erroneous "Burden of Proof – Defenses" instruction, upon remand the trial court should instruct the jury on fourth-degree assault if the evidence presented on retrial is substantially similar.

Despite the Commonwealth's arguments about Peek's testimony being uncorroborated and not credible, our Supreme Court has made clear that questions of credibility and weighing of the evidence must be left to the jury. It has also held that lack of corroboration of a defendant's testimony, standing alone,

does not always mean the defendant is not entitled to an instruction on a lesser-included offense. *Taylor*, 671 S.W.3d at 44-45.

Instead, our Supreme Court has refused to recognize any bright-line rules always requiring corroboration of a defendant's testimony to ever justify instructing the jury on a lesser-included offense – even one based on an affirmative defense – and made clear the totality of the circumstances must be considered:

> Trial courts must be cautious, however, to avoid inadvertently shifting the burden of proof onto the defendant. It can be that merely through cross-examination of the Commonwealth's witnesses and other impeachments of evidence, that the defendant has elucidated additional facts or called into question the allegation of the Commonwealth, that could cause the jury to doubt as to the greater offense but nonetheless find guilt beyond a reasonable doubt on the lesser offense. Therefore, there is no bright line rule that a defendant has to testify, much less that his testimony must be corroborated, to receive a lesser-included offense instruction.
>
> In those cases where a defendant pursues an affirmative defense, thus taking on the burden of demonstrating the truth of that defense, uncorroborated testimony alone may not always suffice to merit an instruction, as we held in *Brafman*. 612 S.W.3d at 859. We reiterate, however, that this is not a bright line rule and even in cases where an affirmative defense has been asserted, uncorroborated testimony could merit a jury instruction. *Id.* The fact that giving a jury instruction is discretionary necessarily implies a case-by-case assessment. But in all cases trial courts must avoid substituting its own beliefs as to truthfulness and credibility when considering what instructions to give the jury.

*Taylor*, 671 S.W.3d at 45-46 (Ky. 2023) (internal quotation marks and additional citations omitted).

Especially as the evidence must be construed in Peek's favor for this determination, *see id*. at 41, we conclude the trial court abused its discretion in refusing to give Peek's proffered instruction on fourth-degree assault considering the totality of the evidence. Further arguments in the briefs not discussed herein lack merit or relevancy to our resolving this appeal.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for further proceedings in conformity with this Opinion.

KAREM, JUDGE, CONCURS.

COMBS, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky